CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 14 2014

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SONYA DENISE WALKER, | ) |
| | ) Civil Action No. 7:12-cv-550 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN,[1] | ) Hon. James C. Turk |
| Acting Commissioner of Social Security, | ) Senior United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff Sonya Denise Walker ("Plaintiff" or "Walker") brought this action for review of Defendant Carolyn W. Colvin's ("the Commissioner") final decision denying her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 401-433; 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction over the action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Both Walker and the Commissioner filed motions for summary judgment. ECF Nos. 10, 15. Neither party has requested that a hearing be held and the motions are now ripe for disposition.

Walker raises two primary grounds for relief in her appeal and in support of her contention that the Commissioner's final decision is not supported by substantial evidence. First, she argues that the Administrative Law Judge ("ALJ") failed to properly evaluate the medical source opinions of two of her treating health care providers, Dr. Knotresha Stewart and Nancy O'Neill, FNP. Second, she contends that the Commissioner's decision fails to adequately take into account medical evidence Walker submitted to the Appeals Council following the ALJ's decision. She posits that the record as a whole, including that additional evidence, renders the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

ALJ's decision unsupported by substantial evidence.

For the reasons stated below, the Court finds that substantial evidence supports the Commissioner's final decision. Accordingly, the Commissioner's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I. STANDARD OF REVIEW

When reviewing the Commissioner's final decision, the Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner reached those findings through application of the correct legal standards. See 42 U.S.C. § 405(g); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted); Hancock, 667 F.3d at 472. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). If the Commissioner's determinations are supported by substantial evidence, a reviewing court may not substitute its judgment for the Commissioner's, but instead must defer to those determinations. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). Accordingly, "[i]n reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ . . . . Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal alterations and citations omitted).

Walker bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The

2

Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A. Procedural Background

Walker applied for both DIB and SSI and initially alleged a disability onset date of April 1, 2004. R. 188, 194. At the hearing, she amended her onset date to October 30, 2008. R. 31-32, 38. As acknowledged by her counsel at the hearing, the amended onset date resulted in the dismissal of her DIB claim because her date last insured for DIB purposes was March 31, 2007, and she could not obtain DIB benefits based on an alleged onset date of October 30, 2008. Id. Her claims were denied on both initial review and on reconsideration. R. 104-25, 129-40.

After a hearing on August 17, 2010, ALJ Geraldine Page issued a decision on August 23, 2010, finding that Walker was not disabled due to her ability to perform light work, with specific additional limitations. The ALJ relied on the vocational expert's testimony that the residual functional capacity found by the ALJ would allow Walker to perform the requirements of occupations such as laundry worker, housekeeper/cleaner, and small parts assembler, all of which are available in substantial numbers in the local and national economies. See generally R. 24 (decision of ALJ).

In reaching this conclusion, the ALJ properly utilized the five-step process for determining whether a claimant is disabled. See Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520) (setting forth the five steps). The ALJ first determined that Walker meets the insured status requirements of the Act through March 31, 2007 and that she has not engaged in substantial gainful activity since at least October 30, 2008, the amended alleged onset date. R. 17. At the second step, the ALJ also concluded that Walker has the following severe impairments: obesity, anxiety disorder, history of polysubstance abuse, arthralgias/degenerative changes of the lumbar spine, and borderline intellectual functioning, but that none of her impairments or combination of impairments meets or medically equals the

4

severity of any listed impairment. R. at 17-18. The ALJ also noted that Walked alleged "visual problems, foot problems, heart problems, right hand problem, and residuals of gunshot wound to the left hand." Id. at 18. The ALJ concluded that these problems were not severe impairments, however, because there the record contained "no objective medical evidence that the[se] conditions cause significant work-related limitations." Id.

Based on the evidence before her, including all the medical evidence at that point, the ALJ determined that Walker had the residual functional capacity to perform the light work "except for that which consists of more than simple, routine, repetitive tasks or requires more than occasional crouching, climbing, or interaction/cooperation with co-workers or the general public." R. 19. Based on this RFC, the ALJ determined, at the fourth step, that Walker was not capable of performing any of her past relevant jobs, all of which were performed at the medium level of exertion. R. 22. The ALJ determined, however, that Walker was capable of performing work that exists in significant numbers in the national economy. R. 23. Accordingly, the ALJ concluded Walker was not disabled under the Act.

After the ALJ issued her decision and while Walker's request for review was pending before the Appeals Council, Walker submitted additional medical records and evidence, as described below. The Appeals Council stated that it considered the new evidence, but nonetheless denied Walker's request for review without further explanation. R. 3-6. Walker sought reconsideration of the Appeals Council's denial of her request for review, which the Appeals Council denied on October 19, 2012. R. 1-2. Walker timely filed this Complaint seeking review of the Commissioner's decision.

B.  **Medical and Other Evidence**

1.  **Evidence Before the ALJ**

Walker was 44 years old on the date of the ALJ's decision,[3] a "younger individual" under the Commissioner's regulations. R. 22, 33. She testified at the hearing before the ALJ that she was able to read, write, and count money. R. 34.

Walker testified that she was diagnosed with fibromyalgia and that, without medication, her feet go numb and that her ankles swell. She testified that the fibromyalgia makes her tired and causes her intense pain in her arms. She also described pain in her back that she could not "dismiss" and said she could lift only ten pounds, walk for only short periods of time, and that she has to lie down a lot during the day.

Additionally, Walker stated that she has "really bad anxiety." She testified that she had started receiving treatment for anxiety in the mid-1990s for "about a year" but then stopped until she started seeing Dr. Stewart in 2010. She testified concerning one time in 2002 or 2003 when she had an anxiety attack and was kept in the hospital for 24 hours, but said she had had no episodes since then that were "that severe." R. at 41-42. She stated, however, that being around a crowd of people makes her nervous and anxious.

Walker also told the ALJ that she had past problems with substance abuse and specifically with drinking alcohol, and that she had checked herself into "New Life Recovery" in Fairlawn and completed an eighteen-month course of treatment there. There are extensive notes from that treatment in the record. See R. 444-610. They reflect that she received treatment there from approximately August 31, 2006 through April 2007. Id. She further testified that she takes the medications Xanax and Soma, which she described as a muscle relaxer, as well as Lortab

---

[3] The hearing was held in August 2010. Although Walker testified at that time that she was 42, she gave her date of birth then (and on her application) as April 4, 1966, so she was actually 44 at the time of the hearing and the decision.

6

every six hours.

Walker previously worked as a certified nursing assistant, a job she held until the nursing home she was working in shut down, as a knitter, a semi-skilled job in a textile mill, in a furniture factory and at a dry cleaner. R. 35-36, 54. The ALJ determined that all of these jobs were performed at a medium level of exertion. R. 22.

### a. Medical Records Pertaining to Walker's Physical Conditions

Walker received treatment from the Free Clinic of Pulaski on March 3, 2006, after she reported she was experiencing arm pain, right hand pain, and upper back pain. Upon examination, she was found to have limited range of motion. R. 408. She returned on March 9, 2006, and reported an improvement in the left shoulder pain, but continuing pain in the right shoulder. R. 408. In April 2006, she received treatment twice. First, at Pulaski Community Hospital on April 17, 2006, she reported a hand injury. R. 336. Five days later, she was treated at Carilion New River Medical Center with increasing pain in her left hand and persistent drainage from a wound in her left hip. R. 313. She was given a diagnosis as cellulitis (bacterial skin infection) in hand and hip. R. 311.

In 2007, still before the alleged onset date, she was seen at the Free Clinic on several occasions for different ailments. On August 27, 2007, she reported feeling shaky, and on September 5, 2007, she indicated she was having panic attacks. R. 406. On December 18, 2007, she reported back spasms and back pain. R. 405-06. Based on Plaintiff's indication that she had previously been diagnosed with multiple sclerosis, she was given a prescription for Soma and referred to the UVA neurological clinic. R. 405. On April 25, 2008, after a January 2008 refill on her Soma prescription, she reported the chronic pain to be "pretty well" controlled on the Soma. R. 403.

On September 21, 2008, shortly before Walker's alleged onset date of October 30, 2008,

7

Walker went to the hospital complaining of left hand pain. R. 323. She had left hand tenderness, but otherwise normal sensation and normal motor function, and an x-ray revealed nothing abnormal. R. 323-24.

On November 9, 2008, Walker went to the hospital complaining of back pain. R. 188, 296. An examination revealed full strength in both legs, normal reflexes, intact sensation, and no swelling in her extremities. R. 297. A lumbar spine x-ray showed only minimal degenerative changes within the lumbar spine with just minimal anterior osteophytosis and no evidence of spondylolysis or spondyloishthesis. R. 292, 301. She was diagnosed as having a LS sprain. R. 298.

On February 29, 2009, Walker told nurse practitioner Nancy O'Neill at the Free Clinic that she occasionally experienced "jumpy feelings," but was otherwise pleased with the results she was getting from her blood pressure mediation. R. 401. She complained of pain in her right hand, right wrist, and right shoulder, as well as occasional headaches that were relieved by the drug Soma. R. 401. She reported continued back pain on April 27, 2009, R. 400, and chest pain in May 2009. R. 399.

Walker's other visits included a March 27, 2009 visit to the Free Clinic, where she reported complaining of chest pain, but physical examination revealed generally normal findings, as well as a July 13, 2009 hospital visit where she complained of pelvic pain that was diagnosed as a symptom of a viral infection. R. 442-43. At the July 13, 2009 visit, Walker had a normal back inspection, non-tender extremities with normal range of motion, normal motor function, and normal sensation. R. 443.

Two state agency physicians reviewed Walker's records and both concluded that she did not have a severe physical impairment—on February 6, 2009 and May 18, 2009, respectively. R. 65-67, 75.

8

Dr. Stewart examined Walker two days before the administrative hearing, on August 15, 2010, and completed a physical residual functional capacity form questionnaire. R. 611. On the form, Dr. Stewart indicated she had been treating Walker since March 12, 2010 and that Walker had been diagnosed with chronic back pain and hypercholestemia (high cholesterol). R. 611. Dr. Stewart wrote as part of her "clinical findings and objective signs" that Walker's "gait in office at times was compromised, decreas[d] leg raise, sensation [and] reflect are normal, point tenderness in lumbar region." Id. Dr. Stewart also stated that Walker had improved on Lortab and was 'able to deal with the pain," but that her symptoms were still present "as per [Walker]." Id. Dr. Stewart also indicated on the form (via a series of check marks in various boxes) that Walker would have limitations that would preclude even the performance of light work. R. 612-614. For example, she opined that Walker was incapable of even "low stress" jobs, that she could only sit for an hour at a time, stand for 15 minutes at a time, and that she could sit for less than 2 hours in an 8-hour work day, and stand/walk for less than 2 hours in an 8-hour work day. Id.

### b. Medical Records Pertaining to Walker's Mental Condition

The records pertaining to Walker's mental condition are much more limited. On November 9, 2008, she reported feeling nervous and agitated, and was diagnosed with anxiety disorder. R. 297-98. On November 21, 2008, she complained to a provider at the Free Clinic of Pulaski that she was more depressed and having increased panic attacks. R. 402. Several months later, on February 2, 2009, nurse practitioner O'Neill noted that Walker was "doing well with Prozac." R. 401. Approximately one year later, on February 15, 2010, O'Neill completed a form regarding Walker's mental ability to perform work and made marks to indicate that "Walker had poor or no ability to make occupational adjustments." R. 410. O'Neill explained her assessment by stating that Walker "is confused, takes medications inappropriately, misses appointments. She makes long, rambling, repetitious phone calls and threatens to report us to the Medical Board.

9

She also has other people call us to complain that we are not providing her the medications she wants." R. 410. O'Neill also marked that Walker had only a "fair ability to understand, remember, and carry-out detailed and simple job instructions, explaining that Walker "forgets or will not accept explanations." R. 411. O'Neill also noted that Walker had poor or no ability to "demonstrate reliability," and fair ability to maintain personal appearance, behave in an emotionally stable manner, and relate predictably in social situations, although O'Neill provided no explanation for these limitations or findings. Id.

Other records relevant to Walker's mental status include notes from Dr. Stephen Besse from Walker's November 9, 2008 visit where she sought treatment for back pain. Dr. Besse noted that Walker was oriented, had clear speech and normal affect, and responded appropriately to questions. R. 297.

Additionally, two state agency psychologists reviewed Walker's medical records and opined—on February 6, 2009 and May 14, 2009, respectively, that she did not have a severe mental impairment. R. 64-65, R. 75-76.

### 2. Additional Evidence Presented to the Appeals Council

After the hearing, Walker's counsel submitted additional records. These included treatment notes from Dr. Stewart referring to three visits (in March, April and July of 2010, respectively) where Walker received treatment from Dr. Stewart.

They also included evidence pertaining to the period subsequent to the ALJ's decision, to wit:

- a July 14, 2011 right knee x-ray showing no abnormality and thoracic spine x-ray showing only mild diffuse degenerative changes, R. 743, 744;
- a July 28, 2011 CT scan as a result of Walker's complaint of headaches, which suggested possible small vessel disease, R. 689, and which the reviewing

10

physician stated were of "uncertain significance" and whose causes could include multiple sclerosis, diabetes, or hypertension, R. 703; and

- a July 12, 2011 psychological examination by Teresa Jarrell, M.A., to whom Walker was referred by her attorney, which resulted in Ms. Jarrell assessing Walker with work-preclusive mental limitations as of July 2, 2011 "by way of knowledge" and as of 2001 "by client report." R. 773.

## III. DISCUSSION

As noted, Walker raises two primary arguments in support of her contention that there is not substantial evidence supporting the Commissioner's decision. First, she asserts that the ALJ failed to properly evaluate the treating medical source opinions of Dr. Stewart and Ms. O'Neill. Second, she argues that evidence obtained after the ALJ's decision, which was not expressly discussed by the Appeals Council, was new and material evidence that supports her original claim of disability. She thus requests a remand pursuant to sentence four of 42 U.S.C. § 405(g), to allow the Commissioner to evaluate the new evidence. ECF No. 11 at 13.

### A. Substantial Evidence Supports The ALJ's Determination of the Weight to be Assigned to the Opinions of Dr. Stewart and Ms. O'Neill

The Court turns first to Walker's contention that the ALJ improperly evaluated the opinions of Dr. Stewart and Ms. O'Neill. Walker raises several objections to the ALJ's assignment of little weight to the opinion of Dr. Stewart. Walker first posits that the ALJ erred in finding her not to be an "acceptable medical source" and second argues that the overall records supports the validity of Dr. Stewart's opinion and as such, her opinion should have been accorded great weight by the ALJ. Walker cites to authority that a treating physician's opinion is entitled to considerable weight and disregarded only if there is persuasive contradictory evidence, which she asserts does not exist in this case.

The Commissioner appears to agree that the ALJ erred in determining that Dr. Stewart

11

was not an acceptable medical source. ECF No. 16 at 11 (acknowledging that the ALJ misidentified Dr. Stewart as a non-acceptable medical source). It nonetheless contends, however, that Stewart's opinion was properly assigned little weight by the ALJ because it is not consistent with other medical evidence, or even Dr. Stewart's own notes, submitted later to the Appeals Council.

Walker also argues that the ALJ failed to properly evaluate Ms. O'Neill's opinion, although she acknowledges that Ms. O'Neill was not an "acceptable medical source" but was instead an "other source" under the regulations. The ALJ concluded that Ms. O'Neill's opinion was entitled to little weight because she failed to provide any objective medical evidence in support of her opinions, R. 22, but Walker asserts that the overall record supports Ms. O'Neill's opinion and that it appears to be "based on the long history of treatment and interaction" with Walker by Ms. O'Neill. ECF No. 11 at 10 (citing R. 410-411).

According to Walker, the errors by the ALJ are not harmless and require reversal and remand. The Court disagrees, and instead concludes that substantial evidence supports the ALJ's determination of the weight to be assigned to the opinions of both Dr. Stewart and Ms. O'Neill.

First, even if Dr. Stewart had been properly treated as a treating source by the ALJ, there is ample evidence in the record supporting the ALJ's decision to give only little weight to Dr. Stewart's opinion. The regulations provide that a treating physician's medical opinion is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence" of record. 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1526(c)(2); Hunter v. Sullivan, 993 F.3d 31, 35 (4th Cir. 1992). Nothing in the governing statute or regulations, however, requires that more weight always be given to the opinions of treating sources. Rather, 20 CFR. § 416.927(d) directs the ALJ to also consider, when determining how much weight to assign a medical opinion, the

supportability of the physician's opinion, the consistency of the opinion with the record, and whether the physician is a specialist. See 20 C.F.R. §§ 416.927(d)(3)-(5); see also Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Thus, the Fourth Circuit has explained that there is no "absolute" rule that greater weight should be afforded to a treating physician's opinion and indeed, it may be given less weight "if there is persuasive contrary evidence." Hines, 453 F.3d at 563 & n.2 (quoting Hunter v. Sullivan, 933 F.2d 31, 35 (4th Cir. 1992)). If, for example, the treating physician's opinion is not supported or is otherwise inconsistent with the record "it should be accorded significantly less weight." Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996). If an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must "give good reasons" for that decision. See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).

The Court has carefully considered Walker's contention that the ALJ erred in affording Dr. Stewart's opinion little weight, but finds it wanting. In this case, the ALJ explained and supported her decision to give little weight to the opinion, stating that the opinion was not supported by objective medical evidence. R. 22. There is substantial evidence in the record to support the ALJ's decision.

Perhaps most notably, the imaging evidence, both before and after the ALJ's decision, reveal at most only a mild impairment of Walker's back, and no abnormalities as to her right knee and left hand. See R. 323-24 (normal left hand x-ray results from September 21, 2008); R. 292, 301 (November 9, 2008 lumbar spine x-ray showing only "minimal degenerative changes and minimal anterior osteophytosis"); R. 743-44 (July 14, 2011 normal right knee x-ray and thoracic spine x-ray showing only mild diffuse degenerative changes). Additionally, Dr. Stewart's own documented examinations and observations of Walker do not support such extreme disabling limitations, nor do other treatment notes in the record. Walker points to Dr.

13

Stewart's assessment that Walker's "gait in office at times was compromised," that she had "decreased leg raise," and that she had "point tenderness in lumbar region." R. 611. At most, however, these describe mild limitations on functionality and, particularly coupled with other notes from Dr. Stewart regarding her observations of Walker and lack of abnormal findings, the ALJ's decision to give little weight to Dr. Stewart's opinion is supported by substantial evidence.

Similarly, Ms. O'Neill, who is simply an "other source" under the regulations,[4] has offered an opinion both unsupported by objective medical findings and inconsistent with other medical evidence of record. First, as the commissioner correctly notes, Ms. O'Neill supports the severe limitations set forth in her opinion only by statements referencing Walker's "noncompliance with treatment and difficulty as a patient, rather than on mental status examination findings." ECF No. 16 at 13 (citing R. 410-11). Furthermore, two state agency psychologists, who had reviewed Walker's records, agreed that she did not have a severe mental impairment. Walker received little treatment other than medication to treat any mental problems, although she received extensive substance abuse treatment in 2006 and 2007. Ms. O'Neill's opinion is also contradicted by Walker's own testimony regarding her mental treatment and abilities. Walker described one brief hospitalization of 24 hours for an anxiety attack in 2002 or 2003—years before the alleged onset date, but stated that she had not experienced any such severe problems since then. R. 42. Moreover, the ALJ took into account Walker's mental difficulties by excluding from her RFC any work that would require more than occasional "interaction/cooperation with co-workers or the general public" or work which consists of anything "more than simple, routine, repetitive tasks."

---

[4] Plaintiff acknowledges this, see ECF No. 11 at 9-10, but points to Social Security Ruling 06-03p, which describes factors to be considered when weighing evidence from "other sources and contends that these factors should have led the ALJ to give great weight to Ms. O'Neill's opinion.

For all of these reasons, Walker's first claim does not entitle her to a remand or to reversal.

### B. The New Evidence Submitted to the Appeals Council Does Not Require Remand[5]

Walker next argues that the additional medical evidence submitted after the ALJ's decision requires remand because it is "new" and "material" and conflicts with the ALJ's decision. In particular, Walker points to the additional treatment notes of Dr. Stewart and the fact that she is a treating physician that the ALJ improperly treated as an "other source", as well as to an evaluation report prepared on August 29, 2011 by Ms. Jarrell. The Commissioner disagrees, instead noting that although the new evidence makes clear that Dr. Stewart was an acceptable medical source, it does not otherwise show that a different outcome was likely, had the ALJ had the additional information before her. The Commissioner also asserts that Ms. Jarrell's report does not require remand for two reasons. First, insofar as it is based on Ms. Jarrell's own evaluation and observations, it relates to a time period <u>after</u> the ALJ's decision and is thus immaterial. Second, insofar as it purports to relate to an earlier time-period, it is based solely on the reports of Walker to Ms. Jarrell, reports which are inaccurate and conflict with other record evidence.

As the Fourth Circuit has explained, when additional evidence is submitted to and considered by the Appeals Council, but review is nonetheless denied, a court must consider the entire administrative record, including the additional evidence, to determine whether the ALJ's

---

[5] To the extent that Walker argues that the Appeals Council was deficient for not discussing the new evidence, the Court disagrees. The decision of the Appeals Council indicates that it did review the additional evidence Wade submitted, but nonetheless denied review. The Appeals Council's failure to discuss the additional evidence in any detail, however, is not a grounds for reversal or remand. While it might have been helpful to this Court had the Appeals Council explained its determination, there is no such requirement imposed on the Appeals Council where it denies review. See Meyer v. Astrue, 662 F.3d 700, 705-06 (4th Cir. 2011) (the regulatory scheme of the Act does not require the Appeals Council to articulate its reasons for denying review even where it considers new evidence, although such an analysis "would [be] helpful for purposes of judicial review").

decision is supported by substantial evidence. Wilkins v. Sec'y Dept. of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991). To justify a remand for consideration of new evidence, the evidence must be "new and material." See Wilkins, 953 F.2d at 95-96. As explained by the Fourth Circuit, "[e]vidence is new . . . if it is not duplicative or cumulative . . . [and] is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96. It must also "relate[] to the period on or before the date of the ALJ's decision." Id.

In this case, the Court agrees with the Commissioner that the additional evidence is not material because it would not have changed the decision of the ALJ. See ECF No. 16 at 14-17 (argument of Commissioner). As to Dr. Stewart's opinion, the Court considered all of the new treatment notes in Section III.A., supra, when it determined that substantial evidence nonetheless supports the ALJ's determination to give Dr. Stewart's opinion little weight. In short, the new treatment notes would not necessarily affect the ALJ's determination, and substantial evidence remains, when considering the entirety of the record, to support the Commissioner's determination.

As to Ms. Jarrell's evaluative report, the Court concludes that it is not material because it would not have changed the outcome in this case. First, Ms. Jarrell's opinion expressly states that "by way of knowledge" her report applies as of July 12, 2011, more than ten months after the close of the relevant period. R. 773. To the extent she claims that the assessment is also accurate as of 2001, "by client report," that assessment need not be credited by the Commissioner because it appears that the information given to Ms. Jarrell by Walker is not consistent with other evidence in the record. For example, the report does not address at all Walker's extensive alcohol abuse history, inpatient and court-ordered alcohol abuse treatment, and inaccurately reflects that Walker has "no history of drug use" although she has in fact tried several different illegal drugs.

16

R. 459, 763. The report also states that Walker had been hospitalized at St. Albans for psychiatric care, but Walker previously reported that she was admitted "for drinking," not for mental health treatment. R. 454, 761. Finally, Ms. Jarrell's report stated that Walker had had no contact with her mother—a source of difficulty and abuse in Walker's life—for four years, but that is flatly contradicted by Walker's statement to Dr. Stewart on July 28, 2010 that she was taking care of her mother at that time. R. 621, 763. All of these conflicts greatly undermine the reliability of Walker's self-reports, which are the only evidence supporting Ms. Jarrell's opinion for the relevant period. In short, the Court concludes that Ms. Jarrell's opinion would not change the outcome of the ALJ's decision and therefore is not material evidence warranting remand.

For all of these reasons, the Court concludes that substantial evidence supports the Commissioner's final determination that Walker is not disabled.

## IV. CONCLUSION

The Court has determined that the ALJ's decision is supported by substantial evidence. Therefore, the Court **GRANTS** the Commissioner's Motion for Summary Judgment, ECF No. 15, and **DENIES** the Plaintiff's Motion for Summary Judgment, ECF No. 10.

An appropriate Order shall issue this day.

ENTER: This 14th day of January, 2014.

Hon. James C. Turk
Senior United States District Judge